EXHIBIT 2

**NORTH CAROLINA**

**MECKLENBURG COUNTY**

**GENERAL COURT OF JUSTICE**
**SUPERIOR COURT DIVISION**
23 CVS ___1617___

FILED

2023 MAY -1 P 2:36

MECKLENBURG CO., C.S.C.

BY ___

YAMIN MOUSSELLI,

    Plaintiff,

v.

HUNTER WARFIELD, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)

**COMPLAINT**

Demand for Jury Trial

Plaintiff, Yamin Mousselli, brings this civil action against Defendant, Hunter Warfield, Inc., and alleges that:

## INTRODUCTION

1.     This is an action brought by an individual consumer against Defendant Hunter Warfield, Inc. for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the North Carolina Collection Agency Act, ("NCCAA"), N.C. Gen. Stat. §§ 58-70-1 *et seq.* Defendant violated these laws by reporting and collecting a debt that Plaintiff does not owe.

## JURISDICTION

2.     Jurisdiction of this Court over the federal claims arises under 15 U.S.C. § 1681p and 15 U.S.C. §1692k(d).

## PARTIES

3.     Plaintiff is a natural person and citizen and resident of Mecklenburg County, North Carolina.

4. Defendant is a business entity that regularly conducts business throughout this State, including Mecklenburg County, and that has a principal place of business located at 4620 Woodland Corporate Blvd., Tampa, Florida 33614. The principal purpose of Defendant's business is the collection of debts already in default using the mails, telephone and other means, and Defendant regularly attempts to collect such debts.

## FACTS

5. Defendant has been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties ("inaccurate information") from at least November 2022 through the present.

6. The inaccurate information includes, but is not limited to, a collection account (together, the "Alleged Debt") with Defendant.

7. The collection account arose out of purported transactions that were primarily for personal, family or household purposes, namely a tenant application made to Metro University City Apartments in Charlotte, North Carolina.

8. At all times pertinent, Plaintiff was not responsible for the Alleged Debt reported by Defendant because Plaintiff never incurred, and was never responsible for payment of, the Alleged Debt.

9. Notwithstanding the above, Defendant has been falsely furnishing and/or reporting the information about the Alleged Debt in connection with Plaintiff's credit history to credit reporting agencies, including, but not limited to, Experian, Equifax and TransUnion when it knew or should have known that Plaintiff did not owe the Alleged Debt.

10. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's creditworthiness.

2

11.     Defendant has been reporting the inaccurate information that, in turn, has been placed in Plaintiff's consumer credit reports that have been disseminated to various persons and credit grantors, both known and unknown.

12.     Plaintiff has disputed the inaccurate information with Experian, Equifax and TransUnion from November 2022 through the present.

13.     Despite Plaintiff's disputes, Defendant has failed to conduct timely and reasonable investigations of Plaintiff's disputes after being contacted by the relevant credit reporting agencies concerning Plaintiff's disputes, has willfully continued to report such inaccurate information to various credit reporting agencies, and has failed to mark the above accounts as disputed.

14.     In addition, Defendant mailed several collection letters (collectively, the "Collection Letters") to Plaintiff and placed several phone calls to Plaintiff (collectively, the "Collection Phone Calls") to collect the Alleged Debt.

15.     As of result of Defendant's conduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score, lost time, frustration and inconvenience, and emotional distress, including humiliation and embarrassment.

16.     At all times pertinent, Defendant was acting through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under Defendant's direct supervision and control.

17.     At all times pertinent, Defendant's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and Plaintiff's rights.

## COUNT I
## VIOLATION OF THE FCRA

18.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this paragraph.

3

19.     At all times pertinent, Defendant was a "person" as that term defined by 15 U.S.C. § 1681a(b).

20.     At all times pertinent, Defendant was a "furnisher" as that term is used in 15 U.S.C. § 1681s-2(b).

21.     Defendant violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

22.     Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to the Plaintiff that are outlined more fully above, and as a result Defendant is liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with attorney's fees and costs, as well as any other relief permitted by law.

## COUNT II
## VIOLATION OF THE FDCPA

23.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this paragraph.

24.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA.

25.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

26.     The Collection Letters that Defendant mailed to Plaintiff are "communications" relating to a "debt" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5) of the FDCPA.

27.     The Collection Letters misrepresented the amount, character and legal status of a debt because, in fact, Plaintiff owes no debt.

28.     In the Collection Phone Calls, Defendant misrepresented the amount, character and legal status of a debt because, in fact, Plaintiff owes no debt.

29.     Defendant violated the FDCPA. Defendant's violations include, but are not limited to, violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(10) and 1692f, by sending the Collection Letters

4

and making the Collection Phone Calls, which misrepresented the amount, character and legal status of a debt when, in fact, Plaintiff owes no debt to Defendant or its principal.

30. Defendant's acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the Alleged Debt.

31. As a result of the above violations of the FDCPA, Defendant is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

**COUNT III**
**VIOLATIONS OF THE NCCAA**

32. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this paragraph.

41. Defendant is a "collection agency" as defined by N.C.G.S. § 58-70-90(1).

42. Plaintiff is a "consumer" as that term is defined by N.C.G.S. § 58-70-90(2).

43. The Alleged Debt is a "debt" as defined by N.C.G.S. § 58-70-90(3).

44. Defendant violated the NCCAA. Defendant's violations include, but are not limited to, violations of N.C.G.S. §§ 58-70-95(3) and 58-70-110(4), as evidenced by the following conduct:

a. Reporting the inaccurate information to credit reporting agencies, including Experian, Equifax and TransUnion;

b. Sending the Collection Letters, which misrepresented the character, extent and amount of a debt when, in fact, Plaintiff owes no debt to Defendant or its principal; and

c. Making the Collection Phone Calls, which misrepresented the character, extent and amount of a debt when, in fact, Plaintiff owes no debt to Defendant or its principal.

45. Plaintiff is entitled to actual damages, statutory damages for each violation of the NCCAA by Defendant.

5

46.     Defendant's acts as described above were done with intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the Alleged Debt.

47.     As a result of the above violations of the NCCAA, Defendant is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

WHEREFORE Plaintiff demands judgment against Defendant for:

A.     Actual damages;

B.     Treble damages pursuant to N.C.G.S. § 75-16;

C.     Punitive damages;

D.     Civil penalties not less than $500 nor greater than $4,000 for each violation of the NCCAA;

E.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o, 15 U.S.C. § 1692k(a)(3) and N.C.G.S. § 75-16.1;

F.     Prejudgment and post-judgment interest; and

G.     Any other fair and equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action.

This the 1st day of May, 2023.

Rashad Blossom (State Bar No. 45621)
Blossom Law PLLC
301 S. McDowell St., Suite 1103
Charlotte, NC 28204
Telephone: (704) 256-7766
Facsimile: (704) 486-5952
rblossom@blossomlaw.com

Attorney for Plaintiff

6

**NORTH CAROLINA**

**MECKLENBURG COUNTY**

**GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 7617**

YAMIN MOUSSELLI,

    Plaintiff,

v.

HUNTER WARFIELD, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

PLAINTIFF'S FIRST SET OF IREQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT HUNTER WARFIELD, INC.

Plaintiff requests Hunter Warfield, Inc. to produce the documents requested herein.

### *Limitations on the Scope of These Requests*

*Unless otherwise specified, all requests concerning the Plaintiff, Yamin Mousselli, seek all documents, irrespective of when created.*

### *Format of Responses*

**You must organize and label the documents to correspond with the categories of the requests.** We suggest you use Bates Numbering, i.e. "In response to Request #3, see documents labeled Hunter Warfield 1499-1528," but do not provide an unorganized document dump. *If any of the documents are stored and used in PDF format in the regular course of business, produce electronic copies of those documents together with all metadata and electronic formatting intact on a USB flash drive (or secure web-based exchange service). Video must be produced in .mp4* format. *All other electronically stored information and documents should be produced in their native format or as used in the ordinary course of business together with all metadata and searchable text intact on a USB flash drive or secure web-based transfer. All documents produced from paper copies should be produced in the format in which it is ordinarily presented, used, or stored, using paper of the same format as that on which it is ordinarily presented, used, or stored. Any screen shots should be captured using a standardized screen capture utility and exported directly to a PDF format and provided on a USB flash drive. Do NOT produce hard copies of any documents unless it cannot be produced electronically.*

1

## Definitions

Unless otherwise indicated, please use the following definitions when interpreting the accompanying discovery requests.

**"Consumer Report"** means the product a consumer reporting agency sells to its customers and as governed by the FCRA.

**"Disputed Account," "Account," and or "subject account"** means the account that was a) the subject of a dispute by Yamin Mousselli within the two years preceding the filing of this suit, b) which is the subject of this litigation as identified in the complaint, or c) for which you prepared or responded to an ACDV or other dispute event in your system upon receipt of this suit. This specifically excludes any dispute concerning Cavalry Portfolio Services, as such improper tradeline was promptly removed.

**"Document(s)"** has the same meaning as in the Federal Rules of Civil Procedure and includes ESI.

**"Plaintiff"** means Yamin Mousselli.

**"You"** or **"Your"** includes Hunter Warfield, Inc. ("Hunter Warfield"), and/or any of its branches, departments, employees, agents, contractual affiliates, or otherwise connected by legal relationship, in the broadest sense. The terms also include any of your sister companies or related entities and their connected companies, whether or not separately incorporated.

**"Person"** as used herein includes any natural person (including any employee, agent or independent contractor) or entity of any type including but not limited to a corporation, partnership, limited liability company, sole proprietorship, association, entity formed under any foreign laws, division or affiliated entity.

**"Affiliate"** for purposes of this discovery request and the preceding definition includes (i) any entity that shares common ownership with you now or within the last five years or that you own any interest or have owned an interest in during the last five years, (ii) has common employees or officers with you, (iii) is contracted to provide services on a regular or ongoing basis or (iv) is or has been granted access to any of your files or electronically stored information for any reason.

For any term that is not defined in these definitions then you should use the everyday common meaning of the term and if needed, you should consult the Merriam Webster dictionary available online. Terms may also be regularly used in the industry.

The documents requested specifically exclude documents created solely by the attorneys of record in this case who are defending you (this does not operate as a bar to purported in-house

2

*counsel or any other attorney who has not filed an appearance in this case).*

*Great care has been taken to prepare discovery which is impervious to any reasonable objection. Rather than make the boilerplate and overused objections claiming matters are vague, overbroad, ambiguous, lack relevance, "highly confidential," proprietary, premature or claim ignorance to commonly used terms, please be reasonable and/or call.*

## Production Requests

**Production Request 1:** All ACDV (Automated Credit Dispute Verification) forms, sent and received, related to the Disputed Account and all data and documents furnished by you to any consumer reporting agency concerning Plaintiff or the Disputed Account in the 2 years preceding this suit.
**RESPONSE:**

**Production Request 2:** If any of the disputes or ACDVs submitted to you (for the Disputed Account) were outsourced or contracted to any person, provide a copy of the all agreements and statement of work under which the ACDV was assigned including any manuals or instructions given to any dispute investigators on how to investigate and respond to a dispute.
**RESPONSE:**

**Production Request 3:** Any documents which describe or set out your automated process to share relevant information about consumers who dispute information contained in their credit reports after receiving any ACDV or other communication regarding a dispute from a consumer reporting agency.
**RESPONSE:**

**Production Request 4:** All documents showing or reflecting any e-OSCAR exchanges or communications concerning the Disputed Account.
**RESPONSE:**

**Production Request 5:** A copy of any identification records, performance evaluations, bonus evaluations, incentive records, production statistics, or other evaluations of the quantity or quality of work performed by any of Hunter Warfield's employees, agents, consultants, contractors or any person who received any type of compensation from you and who participated in any investigation of Plaintiff or the Disputed Account. This request is limited to the last 5 years.
**RESPONSE:**

**Production Request 6:** If any company or person who conducted any credit dispute investigation of the Disputed Account on your behalf, provide all documents which show any payment schedule, pay scale, incentive pay, and/or bonus for such company or person.
**RESPONSE:**

3

**Production Request 7:** Provide documents showing any payment made by you to the company and/or person who conducted any credit dispute investigation of the Disputed Account on your behalf. This request is limited to the time period any ACDV for the Disputed Account was processed to the present date (when you respond).
**RESPONSE:**

**Production Request 8:** All documents showing or mentioning every error you made with respect to the Disputed Account.
**RESPONSE:**

**Production Request 9:** For any expert or skilled witness which you may use at trial or any dispositive motions, provide all of his or her contracts with you, along with all reports, work papers, notes, authority, and documents in the file of, or relied on by, any expert witness who may testify on your behalf.
**RESPONSE:**

**Production Request 10:** All documents that you may produce at trial or for summary judgment.
**RESPONSE:**

**Production Request 11:** All e-OSCAR User Guide documents.
**RESPONSE:**

**Production Request 12:** All subscriber agreements and any other written agreement between you and any consumer reporting agency to which you furnished information concerning Plaintiff or the Disputed Account.
**RESPONSE:**

**Production Request 13:** A copy of any identification records, performance evaluations, bonus evaluations, incentive records, production statistics, or other evaluations of the quantity or quality of work performed of any of Hunter Warfield's employees, agents, or contractors who participated in any investigation of Plaintiff or the Disputed Account. This request is limited to the last 5 years.
**RESPONSE:**

**Production Request 14:** Provide all W-2 forms, 1099 forms, and any other documents showing or reflecting payment to the individuals and/or companies who participated in the credit investigations at issue for the Disputed Account(s).
**RESPONSE:**

**Production Request 15:** Provide Hunter Warfield's audited balance sheet for the years 2020 – 2023.
**RESPONSE:**

4

**Production Request 16:** Provide Hunter Warfield's federal tax returns and schedules for the calendar years 2020 - 2023.
**RESPONSE:**

**Production Request 17:** Provide all non-privileged documents that you provided to the attorneys who represent you in this case which relate to this case, the Plaintiff or the Disputed Account or any statistics and metrics related to the Disputed Account, errors or any matters embraced by written discovery in this case. Please note that the underlying documentation transmitted to an attorney is not privileged simply because the substance of the communication conveying the documents may be privileged.
**RESPONSE:**

**Production Request 18:** Provide any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.
**RESPONSE:**

**Production Request 19:** All collection and reporting notes, logs, and any other compilation of information involving the Plaintiff or the Disputed Account, regardless of what you call any such document.
**RESPONSE:**

**Production Request 20:** All manuals, documents, or correspondence in your, and/or your attorney's, possession that which you anticipate will be the subject of testimony at trial.
**RESPONSE:**

**Production Request 21:** Any contract of employment or job description for any expert witness who is expected to testify on your behalf.
**RESPONSE:**

**Production Request 22:** All reports, work papers, notes, authority, and documents in the file of, or relied on by, any expert witness who may testify on your behalf.
**RESPONSE:**

**Production Request 23:** All documents upon which you relied, reviewed or consulted to answer your interrogatories in this case. (This excludes documents created solely by the attorneys that represent you in this case who have appeared in this lawsuit.)
**RESPONSE:**

**Production Request 24:** All documents upon which you relied to prepare for any Rule 30 deposition. (This request should be seasonably supplemented so as to avoid surprise.)
**RESPONSE:**

**Production Request 25:** Provide documents showing any payment made by you to the company and/or person who conducted any credit dispute investigation of the Disputed Account on your behalf.

5

**RESPONSE:**

**Production Request 26:** If any company or person who conducted any credit dispute investigation of the Disputed Account on your behalf, provide all documents which show any payment schedule, pay scale, incentive pay, and/or bonus for such company or person.
**RESPONSE:**

**Production Request 27:** Provide either the complaints submitted to you by the Consumer Financial Protection Bureau (CFPB) or a listing of such complaints as you keep them in the ordinary course of business.
**RESPONSE:**

Rashad Blossom (State Bar No. 45621)
Blossom Law PLLC
301 S. McDowell St., Suite 1103
Charlotte, NC 28204
Telephone: (704) 256-7766
Facsimile: (704) 486-5952
*Attorney for Yamin Mousselli*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Summons, Complaint, Interrogatories and Requests for Production of Documents for this action were served by U.S.P.S. certified mail on:

Hunter Warfield, Inc.
c/o Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh NC 27608

USPS Certified Mail 70183090000032212275

Date: June 7, 2023

Rashad Blossom

6

**NORTH CAROLINA**

**MECKLENBURG COUNTY**

**GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23 CVS 7617**

YAMIN MOUSSELLI,

    Plaintiff,

v.

HUNTER WARFIELD, INC. ,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

PLAINTIFF'S FIRST SET OF
INTERROGATORIES TO DEFENDANT
HUNTER WARFIELD, INC.

## Limitations on Scope of Requests

*Unless otherwise specified, all requests are limited to documents created or used within the preceding 5 years.*

### *Definitions*

*Unless otherwise indicated, please use the following definitions when interpreting the accompanying discovery requests.*

*"Disputed Account," "Account," and/or "subject account" means the account that was a) the subject of a dispute by Yamin Mousselli within the two years preceding the filing of this suit, b) which is the subject of this litigation as identified in the complaint, or c) for which you prepared or responded to an ACDV or other dispute event in your system upon receipt of this suit.*

*"Document(s)" has the same meaning as in the Federal Rules of Civil Procedure and includes ESI.*

*In relation to an individual, "identify" means to provide that individual's true name, any aliases, last known home address, last known home phone number, social security number, date of birth, and (if employed by you) the person's job title and duties along with the relevant dates of*

1

employment. If you do not have home address or identification information, please provide the business address and phone number where that person is customarily contacted by you.

In relation to an entity, "***identify***" means to provide the true legal name of that entity, the telephone number and the address for that entity's main office or headquarters.

In relation to a document "***identify***" means to provide any name given to the document or used by you to identify it, its author(s) or the system that prepared the document, the date on which it was created or prepared, the department responsible for creating or preparing the document, the department responsible for storing the document, any computer system where the document is stored, and the system administrator responsible for storing the document.

"***Plaintiff***" means Yamin Mousselli.

"***You***" or "***Your***" includes Hunter Warfield, Inc. ("Hunter Warfield") and any other person or entity acting on behalf of Hunter Warfield.

For any term that is not defined in these definitions then you should use the everyday common meaning of the term and if needed, you should consult the Merriam Webster dictionary available on line and use that definition to provide an answer or response to the discovery request(s).

***[The remainder of this page is intentionally left blank.]***

2

## Interrogatories

**INTERROGATORY 1:** Provide the legal names, addresses (work and if no longer a Hunter Warfield employee, personal as well) and employer(s) (on the date of the investigation/reinvestigation AND presently) for each person who reviewed, completed, participated in or supervised any credit dispute investigation (or reinvestigation) for or on behalf of Hunter Warfield related to Plaintiff or the Disputed Account. (Please be advised that we need addresses not only for investigation, but also such that we may obtain valid service should we elect to depose these individuals. This request is intended to obtain information concerning the people who processed disputes/ACDVs and communicated with Metro University City Apartments.

For each such person, please identify the dispute in which he, she or it reviewed, completed, participated in or supervised by providing the name of the credit reporting agency or furnisher which gave you notice of a dispute and date of such notice.

**ANSWER:**

**INTERROGATORY 2:** Name, employer and address (if Hunter Warfield employee, work address is fine) of the person(s) who submitted any ACDV or response to an ACDV to consumer reporting agency (including Metro University City Apartments) concerning Plaintiff or the Disputed Account. (Please be advised that we need addresses not only for investigation, but also such that we may obtain valid service should we elect to depose these individuals. This request is intended to obtain information concerning the person who processed disputes/ACDVs and communicated with Metro University City Apartments.

**ANSWER:**

**INTERROGATORY 3:** Identify each person who you may use to support your defenses who has formed any opinions (lay, skilled or expert) relating to the events underlying this lawsuit. For each such person, briefly describe the information or opinions possessed by that person and whether they have personal knowledge of the events underlying that knowledge or opinion and any authoritative manuals or treatises which inform their opinions.

**ANSWER:**

3

**INTERROGATORY 4:** For each person identified above who has offered trial or deposition testimony, identify the case number, Court, caption, court reporter, and counsel of record of the case in which for which that testimony was given.

**ANSWER:**

**INTERROGATORY 5:** Identify the provisions of any authoritative resource, treatise, book, text, or other document which you or your experts believe to reflect the standard of care required of you in relation to the claims in this case, which is authoritative in relation to those claims or which you may rely on to establish that standard of care.

**ANSWER:**

**INTERROGATORY 6:** Please identify Hunter Warfield's current net worth, along with its revenue and profit for the years 2020, 2021, 2022 and 2023. (This information is a necessary to evaluate the propriety and basis of alternative means of reinvestigation and for punitive damages.)

**ANSWER:**

**INTERROGATORY 7:** For each of Hunter Warfield's affiliates, please identify each company's net worth, revenue and profit for the years 2020, 2021, 2022 and 2023. (This information is a necessary to evaluate the propriety of a punitive damages award, especially where another entity shows Hunter Warfield's resources which are not reflected in Hunter Warfield's books and final net worth/audited financials.)

**ANSWER:**

**INTERROGATORY 8:** Please describe the pay scale, any incentive, bonus, or other factors affecting compensation for any person(s) who reviewed, completed, participated in or conducted any credit reporting dispute of the Plaintiff or the Disputed Account as of the time of the investigation/reinvestigation. For each such person, please provide his/her complete legal name, home address, current employer and work address, and telephone number.

**ANSWER:**

4

**INTERROGATORY 9:** For each of the calendar years 2020 - 2024, please state the amount you budgeted and paid for (1) error and omission insurance and (2) litigation, including defense of consumer protection claims.

**ANSWER:**

**INTERROGATORY 10:** For each of the calendar years 2020 - 2024, please state the amount you budgeted and paid for all credit dispute investigations/reinvestigations.

**ANSWER:**

**INTERROGATORY 11:** Please identify each and every person who was charged with training your employees, agents or contractors to process or respond to consumer disputes during the time that any disputes concerning Plaintiff or the Disputed Account were received or processed by you. Please also identify your company's employee most responsible for training the people who process ACDVs currently, along with the person responsible for compliance. When identifying these people, include their work address, job title, and job description, home address, and home phone. (If defense counsel agrees, in writing, to accept service for such person—including for subpoenas to testify at deposition or trial, home address is not required.)

**ANSWER:**

**INTERROGATORY 12:** Please identify (name, address, telephone number and last known email address) for each person who separated from employment or a relationship (of any nature) with Hunter Warfield during the preceding three years, who resides within the territorial United States, and who reviewed, completed, participated in or supervised any investigation (or reinvestigation) into consumer disputes of any credit information provided by you to any consumer reporting agency, consumer or furnisher.

**ANSWER:**

**INTERROGATORY 13:** Please identify each and every manager or other person who was charged with training your employees, agents or contractors to process or respond to consumer disputes during the time that any disputes concerning Plaintiff or the Disputed Account were

received or processed by you. When identifying the individual, include that person's work address, job title, and job description, home address, and home phone.

**ANSWER:**

**INTERROGATORY 14:** Describe, in detail, each step in the step-by-step process by which you process disputes by consumers, including disputes of credit information, and with respect to each step of that process, describe the approximate average, maximum, and minimum quantities of time it takes any person paid by you to complete each step.

**ANSWER:**

**INTERROGATORY 15:** Describe, in detail, each step in the step-by-step process by which you process disputes by consumers, including disputes of credit information, and with respect to each step of that process, describe the approximate average, maximum, and minimum quantities of time it takes you or a third party hired by you to complete each step.

**ANSWER:**

**INTERROGATORY 16:** Please identify all documentation you use or consult to conduct any credit dispute investigation (or reinvestigation), including for the type of dispute concerning the Disputed Account, for operational and training purposes. (This could be, for example, an e-OSCAR Guide, internal training documentation, or a Credit Reporting Resource Guide.)

**ANSWER:**

**INTERROGATORY 17:** For each year from 2020 to the present, state your average cost for the investigation (or reinvestigation) of each consumer dispute and identify all persons with knowledge of these figures and all documents that contain them.

**ANSWER:**

**INTERROGATORY 18:** Please identify and describe all documents that were withheld from your discovery production, including on the basis of any objection. (For example, "Defendant withheld the estimated insurance budgets for 2019 and 2020 on the basis of _____." We want to

6

know whether any documentation exists and whether we (not you) believe the documentation may be helpful to our case.)

**ANSWER:**

**INTERROGATORY 19:** Have you, for any of the last 3 years, had in place any subscriber agreement or other written document between you and any consumer reporting agency to which you furnished information concerning the Disputed Account? If so, please state the name, phone number and address of the people who have access to said documentation.

**ANSWER:**

**INTERROGATORY 20:** Have you made any errors or mistakes related to the credit reporting or collection attempts concerning Plaintiff or the Disputed Account? If your response is anything other than an unqualified "no," please identify and describe:

a)      all such errors and mistakes you made, providing the date and names of individuals committing the error(s) (or identification of any system error);

b)      when and by what means you learned of such errors;

c)      the procedures you have in place to avoid such error(s) or mistake(s); and

d)      the number of times you have made each such error relating to any person or account (not just the Disputed Account at issue of Plaintiff).

**ANSWER:**

**INTERROGATORY 21:** Explain the details of the compensation paid by you to any person which conducts or participates in any credit dispute investigations (or reinvestigations) on your behalf, and for any person or company which handled the disputes for the Disputed Account? Your answer should include details of the payment for the persons who handle credit dispute investigations.

**ANSWER:**

7

**INTERROGATORY 22:** Relating to lawsuits in which Hunter Warfield is the defendant or counterclaim defendant brought by an individual relating to non-commercial matters, please identify:

a)      The total number of such lawsuits;

b)      The number of such lawsuits for which you did not pay any money to the adverse party; and

c)      The number of such lawsuits that were settled which included a confidentiality clause.

**ANSWER:**

**INTERROGATORY 23:** Identify (correct legal name, phone number, and address for service of process) all people and/or entities tasked with credit reporting, furnishing of credit information and investigations of the Disputed Account.

**ANSWER:**

**INTERROGATORY 24:** Identify and describe all information you provided to or received from any consumer reporting agency within the last 3 years regarding Yamin Mousselli or the Disputed Account. Include in your answer any information you believe was inaccurate, false or misleading.

**ANSWER:**

**INTERROGATORY 25:** Part of the FDCPA defines the term "debt collector" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Given this, we ask:

A) If your principal purpose is not the collection of debts, what is it?

B) Does your business regularly attempt to collect debts asserted to be owed another?

**ANSWER:**

**A)**

**B)**

8

Rashad Blossom (State Bar No. 45621)
Blossom Law PLLC
301 S. McDowell St., Suite 1103
Charlotte, NC 28204
Telephone: (704) 256-7766
Facsimile: (704) 486-5952
*Attorney for Yamin Mousselli*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Summons, Complaint, Interrogatories and Requests for Production of Documents for this action were served by U.S.P.S. certified mail on:

Hunter Warfield, Inc.
c/o Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh NC 27608

USPS Certified Mail 70183090000032212275

Date:   June 7, 2023

Rashad Blossom

9

Blossom Law PLLC
301 S. McDowell St.
Suite 1103
Charlotte NC 28204

CERTIFIED MAIL

7018 3090 0000 3221 2275



RDC 20



27608

U.S. POSTAGE PAID
FCM LG ENV
CHARLOTTE, NC
28204
JUN 07, 23
AMOUNT
**$9.72**
R2307M152768-70

Hunter Warfield, Inc.
c/o Corporation Service Company
2626 Glenwood Avenue, Suite 550
Raleigh NC 27608